IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

JEFF SILVER, DAVID PESKIN, KENNETH PESKIN,
HICKSVILLE LIBERTY, L.L.C., and
WESTBURY LIBERTY, L.L.C.,

        Plaintiffs,

v.                                                                       Civil Action No. 2:05cv126

JTH TAX, INC., d/b/a
LIBERTY TAX SERVICE and
JOHN HEWITT,

        Defendants.

## ORDER and OPINION

This matter comes before the court on the defendants' motion to strike the plaintiffs' jury demand and the plaintiffs' request for punitive damages. The motion has been fully briefed by the parties, and the court finds that a hearing is not necessary to resolve the issues presented. For the reasons set forth, the court **GRANTS** the defendants' motion to strike.

I. Background

This action stems from the failed franchise relationship between the franchisee-plaintiffs and the franchisor-defendants. From the face of the Complaint filed by the plaintiffs, it is alleged that the individual plaintiffs, Jeff Silver, David Peskin and Kenneth Peskin, visited the headquarters of the defendant JTH Tax, Inc., doing business as Liberty Tax Service ("Liberty"), in Virginia Beach, Virginia on two occasions in the fall of 2003. The purpose of these visits was to explore the possibility of the individual plaintiffs becoming Liberty franchisees. One of these visits occurred in December 2003. The plaintiffs claim that the defendants made various

misrepresentations on each of these visits, and that these misrepresentations induced the individual plaintiffs to enter into two separate Liberty Tax Service Franchise Agreements ("the Agreements"), which granted the individual plaintiffs the right to own and operate two Liberty Tax franchises in the territories of Hicksville, New York and Westbury, New York. It appears that the individual plaintiffs formed the corporations Hicksville Liberty, LLC and Westbury Liberty, LLC, for the purposes of operating their franchises, although Liberty disputes that any agreement was ever formed with the corporate plaintiffs. It is alleged in the Complaint that Liberty purchased the Westbury, New York territory back from the plaintiffs in January 2004.

The plaintiffs filed their six-count Complaint on March 2, 2005. They seek rescission and damages owing to the defendants' alleged acts of actual and constructive fraud (Counts One and Two), violations of the New York Franchise Sales Act (Count Three) and the Virginia Retail Franchise Act (Count Four), breach of contract (Count Five) and breach of the implied covenant of good faith and fair dealing (Count Six). The plaintiffs request compensatory damages in the amount of $150,000, punitive damages in the amount of $350,000 and attorneys' fees and costs. The plaintiffs also demand a trial by jury.

The defendants filed an Answer and Counterclaim on March 28, 2005. The defendants allege that the plaintiffs have breached the Hicksville, New York Agreement and seek damages in the amount of $100,000 and a permanent injunction compelling the plaintiffs to abide by any non-monetary obligations of the post-termination covenants contained in this Agreement.

## II. Discussion

### A. Motion to Strike

The defendants filed the instant motion to strike on April 22, 2005. In their supporting

memorandum, the defendants maintain that the plaintiffs, in entering into the Agreement,[1] knowingly and intentionally waived their right to a jury trial and their right to seek punitive damages.

The Agreement entered into by the parties contains a number of provisions that are relevant to the instant motion. Paragraph 15 of Agreement is entitled "Governing Law." The following subparagraphs are at issue and provide as follows:

> a. Virginia Law. This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.
>
> c. Jury Waiver. In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.
>
> e. Compensatory Damages. In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

In their response to the motion to strike, filed on May 3, 2005, the plaintiffs claim that the choice of law provision located in Paragraph 15(a) is contrary to an anti-waiver provision of the New York Franchise Sales Act ("NYFSA"). The plaintiffs maintain that this anti-waiver provision serves to render void any portion of a franchise agreement which causes a franchisee to waive the protection of the NYFSA. See N.Y. Gen. Bus. Law § 687(4). The plaintiffs interpret

---

[1] Even though it appears that the individual plaintiffs entered into two separate Agreements with the defendants, the parties refer to 'Agreement' in the singular, likely owing to the undisputed fact that the defendant purchased the Westbury, New York franchise back from the plaintiffs only one month after the entry of that Agreement. Accordingly, for the remainder of this Order and Opinion, the court refers to the franchise contractual arrangement between the parties in the singular form, i.e., "the Agreement."

Paragraph 15(a) as an attempt to circumvent this protection by precluding the application of New York law or any claims based on the NYFSA. Assuming New York law applies, the plaintiffs claim that the Agreement is void in its entirety because it was entered into in violation of the NYFSA, therefore the waivers regarding the right to a jury trial and punitive damages may not be enforced. Specifically, the plaintiffs maintain that the defendants violated the NYFSA by making false or misleading statements of fact in connection with the offer and sale of the Liberty Tax franchises.

The defendants respond in their reply memorandum that the anti-waiver provision of the NYFSA does not void the choice of law provision contained in Paragraph 15(a). The defendants contend that even if the New York Sales Franchise Act applies in this case, Virginia law controls all other claims and under Virginia law, both the jury and punitive damages waivers are binding. Furthermore, the defendants argue that the waiver provisions of the Agreement at issue do not conflict with the New York Sales Franchise Act, such that the waivers remain enforceable under the law of either New York or Virginia.

Despite the relative prominence of the choice of law issue in the briefs of the parties, the court, pursuant to the following discussion, concludes that it need not definitively decide whether the Virginia choice of law provision is in conflict with the NYFSA such that Paragraph 15(a) is void, or, in the alternative, whether a valid contracted choice of the law of Virginia precludes a claim under, or operation of, the NYFSA. This is because the outcome of this choice of law question, although certainly relevant to the outcome of this litigation, has no determinative impact on the provisions of the Agreement at issue in the defendants' motion to strike - namely, subparagraphs (c) and (e) of Paragraph 15 relating to the waivers of a jury trial and the right to

seek punitive damages.  See Carlock v. The Pillsbury Co., 719 F. Supp. 791, 827 (D. Minn. 1989) (noting that court need not determine, at early stage of litigation, which state's laws apply because conflict of laws analysis is only necessary where there is an "outcome determinative" conflict).  The court concludes that under the law of either New York or Virginia, and considering relevant federal law with respect to the jury trial waiver, the provisions of the Agreement purporting to waive the right to a jury trial and the right to punitive damages are enforceable such that the defendants' motion to strike must be granted.  The court does believe, however, that it is appropriate and necessary to provide some preview of the relevant choice of law analysis that may become applicable in future proceedings.  Such a discussion is necessary to outline the reach of the choice of law provision and to provide context to any discussion of the reach of the NYFSA.

     B. Choice of Law

The choice of law provision contained in Paragraph 15(a) broadly seeks to encompass "all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto."  Subparagraph (a) does attempt to restrict, however, the applicability of the Virginia Retail Franchising Act to franchisees whose franchise territories are located outside of Virginia.  See Va. Code. Ann. §§ 13.1-557-574.  The plaintiffs claim that this provision of the contract, to the extent it prevents the plaintiffs from exercising their rights under the NYFSA, is in conflict with their rights under the NYFSA, which cannot be waived or contracted away.  Accordingly, the plaintiffs, although they have alleged claims under Virginia law, appear to argue that New York law must apply in this case.  The plaintiffs then argue that the NYFSA operates further to void the Agreement entirely, such that the waivers relied upon by the defendants

cannot be enforced.

It is well-recognized that in an action based upon diversity of citizenship, a federal district court must apply the relevant law of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Limbach Co., LLC v. Zurich Am. Insur. Co., 396 F.3d 358, 361 (4th Cir. 2005). This principal holds equally true in determining which state's rules govern the choice of law. See Limbach, 396 F.3d at 358. Thus, the court must apply Virginia choice of law rules. See Klaxon, 313 U.S. at 496-97. It is equally well-settled in Virginia that the law of the place of the wrong or injury, known as the lex loci delicti, controls substantive issues while the law of the forum, the lex fori, controls procedural issues. See Jones v. R.S. Jones & Assocs., 246 Va. 3, 5 (1993). It does appear that the Complaint alleges that many of the alleged acts of misrepresentation and fraud occurred in Virginia, such that Virginia law would apply even in the absence of the choice of law provision of the Agreement.

Virginia law looks favorably upon choice of law provisions in contracts, "giving them full effect except in unusual circumstances." See Hitachi Credit Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999) (citing Tate v. Hain, 181 Va. 402 (1943)). Likewise, New York law also honors provisions in agreements stipulating that the law of a particular jurisdiction will govern the relations between the parties. See Mon-Shore Mgmt., Inc. v. Richie, 584 F. Supp. 186, 193 (S.D.N.Y. 1984) (applying New York law to franchise agreement where stipulation of chosen forum's law was evident).

Virginia law recognizes the separate tort of fraud, even where the parties have entered into a contract. See City of Richmond v. Madison Mgmt. Group, Inc., 918 F.2d 438, 446-47 (4th Cir. 1990). Where a cause of action arises in tort, Virginia applies the law of the state where the

tortious conduct or injury occurred.  See Jones v. R.S. Jones & Assocs., 246 Va. 3, 5 (1993). Even so, the Fourth Circuit has recognized that where a choice of law clause in a contract is sufficiently broad to encompass contract-related tort claims such as fraudulent inducement, courts will honor the provision with respect both to claims arising out of the contract and related fraud claims.  See Hitachi, 166 F.3d at 628.  The court also observes that in the franchise context, the need for uniform enforcement of franchise agreements has been a consideration of various courts in decisions to enforce a contractual choice of law provision.  See Carlock, 719 F. Supp. at 808; Capital National Bank v. McDonald's Corp., 625 F. Supp. 874, 880 (S.D.N.Y. 1986); Sullivan v. Savin Business Machines Corp., 560 F. Supp. 938, 940 (N.D. Ind. 1983).

An analogous case in which a choice of law provision was found to preclude application of the forum's state franchise law is Carlock v. The Pillsbury Co., 719 F. Supp. 791 (D. Minn. 1989), in which the plaintiffs, Hagen Daas ice cream franchises, argued that application of a New York choice of law provision would allow the defendants to avoid the protections of Minnesota's Franchise Act.  See Carlock, 719 F. Supp. at 810.  As in the instant case where the analogous Virginia franchise law does not apply to out of state franchises, the court in Carlonck determined that the NYFSA did not cover the plaintiffs, whose franchises were located in Minnesota rather than New York.  See id.  Similar to the NYFSA, the Minnesota Franchise Act contained an anti-waiver provision which made void any "condition, stipulation or provision" purporting to bind the franchisee to a waiver of the Minnesota Act's provisions.  See id. at 809 (citing Minn. Stat. § 80C.21).  The Carlock court concluded that franchisee protections embodied in the Minnesota Franchise Act were offset by the countervailing policy of enforcing the parties' choice of law and that "a choice of law clause which precludes application of the Minnesota Franchise Act is not

repugnant to Minnesota's public policy." Id. at 810-11.  The Carlock court determined that the counts relying on the Minnesota Franchise Act should be dismissed, but declined to do so sua sponte.  See id.

It is not clear to the court whether the analysis used in Carlock would be applicable to the instant case, but, as referenced above, the court need not resolve this issue at this time.  It does appear to the court that the Virginia choice of law rules would require the application of the contractual choice of law provision contained in Paragraph 15(a), save for the presence of unusual circumstances.  Hitachi, 166 F.3d at 624.  It also appears that Paragraph 15(a) would be valid under New York law.  See Mon-Shore, 584 F. Supp. at 193.  The plaintiffs claim, however, that unusual circumstances do exist in the form of the anti-waiver provision of the NYFSA, that would render the choice of law provision unenforceable.  The court, for the purposes of this Order and Opinion, will assume without deciding that the choice of law provision does not preclude application of the NYFSA and will look to what impact the NYFSA would have upon the choice of law provision and what impact it does have on the waiver provisions at issue in the defendants' motion.

C. New York Franchise Sales Act

The New York Franchise Sales Act was enacted in the early 1980s by the New York legislature for the purpose of curbing widespread franchise abuse and to protect would-be franchisees from fraudulent and unethical practices.  See Temple Marble & Tile v. Union Carbide Marble Care, 162 Misc. 2d 941, 948 (N.Y. Sup. Ct. 1994).  The legislature deliberately drafted the NYFSA to "incorporate stringent disclosure and broad antifraud provisions."  Id.  The anti-waiver provision relied on by the plaintiffs is contained in section 687 of the NYFSA and

provides that "[a]ny condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law, or rule promulgated hereunder, shall be void." N.Y. Gen. Bus. Law § 687(4). Additionally, the court observes that section 687 also provides that "[i]t is unlawful to require a franchisee to assent to a release, assignment, novation, waiver or estoppel which would relieve a person from any duty or liability imposed by this article." N.Y. Gen. Bus. Law § 687(5).

Notwithstanding these prohibitions, however, and contrary to the claims of the plaintiffs, "the statute does not purport to regulate the contractual relationship at all." TKO Fleet Enter., Inc. v. Elite Limousine Plus, Inc., 184 Misc. 2d 460, 463 (N.Y. Sup. Ct. 2000). The NYFSA merely operates to void those contractual provisions which purport to waive or release rights or remedies of a franchisee under the NYFSA. "[W]hile the statute may not be read to regulate the terms of the [franchise] agreement, a franchisee will not be found to have waived or contracted away its rights and remedies under the [New York] Franchise Sales Act." Id. (citing Temple Marble, 162 Misc. 2d at 948).

The NYFSA affords a statutory remedy to franchisees if the franchisor sells a franchise in violation of section 683. Pursuant to section 691(1) of the Act, a franchisee may sue for "damages and, if such violation [is found to be] willful and material, for rescission, with interest at six percent per year from the date of purchase, and reasonable attorney fees and costs." N.Y. Gen. Bus. Law § 691(1). Accordingly, "inasmuch as the statute provides a remedy for aggrieved franchisees, and is not intended to regulate the parties' actual contractual relationship . . . an additional penalty, a nullification of the contract, [need not] be read into the regulatory scheme." TKO Fleet, 184 Misc. at 463-64. Thus, even assuming that defendants have committed

9

misrepresentations in violation of the NYFSA, such a violation does not result in a nullification of the Agreement. See id. at 462 (finding that contract in violation of section 683 is not void).

Assuming the NYFSA does invalidate or otherwise evade application of the choice of law provision in Paragraph 15(a), its operation on the Agreement is limited to preventing franchisees from waiving or contracting away rights and remedies under the Act. See Temple Marble, 162 Misc. 2d 941 (noting that merger and waiver clauses in franchise agreement did not bar franchisee's statutory claims under Act). The plaintiffs interpret the anti-waiver provision of the NYFSA to mean that they cannot be required to contractually consent to the law of another forum. But this is clearly too broad of a read of the NYFSA. There is nothing in the language of the NYFSA that either explicitly or implicitly limits the right of a New York franchisee to contract to the law of a different forum, or that prevents waivers of the right to a jury trial or to punitive damages. See N.Y. Gen. Bus. Law §§ 680-695.

Moreover, the waiver provisions at issue do not attempt to contract out of any potential liability imposed on the franchisor under the Act. These waivers of the right to a jury trial and to the pursuit of punitive damages do not "impermissibly permit defendants to get around the antifraud provisions of the Franchise Act by contracting out of such liability." Temple Marble, 162 Misc. 2d at 948-49. The court concludes that even if the choice of law provision does impermissibly act to bar a claim under the Act, it would be only this provision, and not the entire Paragraph 15, which would be voidable. See id. (noting that only merger and waiver clauses contained in franchise agreement do not act to bar plaintiff's claims under Act); Thrifty Rent-a-Car Systems, Inc., v. Brown Flight Rental One Corp., 24 F.3d 1190 (10th Cir. 1994) (reversing district court finding that integration-disclaimer clause barred claims under NYFSA but declining

to decide whether NYFSA was applicable in suit brought in foreign jurisdiction). Furthermore, even assuming, as do the plaintiffs, that the NYFSA renders the choice of law provision void, it would likely only be voidable to the extent it served to prevent the plaintiffs from bringing a claim under the Act or otherwise seeking to avail themselves of the Act's rights and remedies. See e.g., Three M Enterprises v. Texas D.A.R. Enterprises, Inc., 2005 U.S. Dist. Lexis 8323, at *23 (D. Md. May 5, 2005) (finding that anti-waiver provision in Maryland franchise act served only to invalidate choice of law provision as applied to claims asserted under that act). In other words, Virginia law would likely apply to the remainder of the plaintiffs' claims that do not rely upon the NYFSA.

In this sense, it may be that the choice of law provision and a claim under the NYFSA are not inconsistent or violative of one another. A claim under the NYFSA is based on the statute itself, rather than the underlying franchise contractual agreement. As such, a NYFSA claim does not serve to nullify the Agreement itself, but as a claim separate from the Agreement, it may not be subject to the preclusive effect of the choice of law provision contained in the Agreement. By the terms of the choice of law provision and by the terms of Virginia's own Retail Franchise Act, it appears as if the protections of the Virginia version of the NYFSA cannot apply to the plaintiffs. This is because the applicability of the Virginia Retail Franchising Act is limited to "a franchise the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the Commonwealth of Virginia." Va. Code. Ann. § 13.1-559(B). There is no dispute that the Liberty tax service franchises operated by the plaintiffs were located in New York.

Beyond the impact of the NYFSA on the choice of law provision in Paragraph 15(a), the

plaintiffs argue that the jury trial and punitive damages waiver provisions are invalid because the Agreement itself is unenforceable due to the alleged violations of the NYFSA. This argument is strained because the issues of these violations and the validity of the Agreement are the subjects of this dispute and are covered by the jury trial waiver. See Seligson v. The Plum Tree, Inc., 361 F. Supp. 748, 758 (E.D. Pa. 1973) (noting that similarly worded jury trial waiver encompassed issue of validity of contract claimed to be unenforceable). Furthermore, as discussed, it is clear that the only impact the NYFSA would have on the Agreement would be to render void those provisions in conflict with the rights guaranteed under the Act. It would apply piecemeal, rather than to the Agreement in its entirety. See TKO Fleet, 184 Misc. at 463-463. The NYFSA itself says nothing about waivers of the right to a jury trial and/or punitive damages, and the plaintiffs have not demonstrated how such waivers result in a waiver of rights or remedies under the NYFSA. Accordingly, the court turns to whether these waivers are valid under the otherwise applicable law of either Virginia, New York, or, in the case of the jury trial waiver, under federal law.

D. Waiver of Right to Jury Trial

The right to a jury trial in civil cases is governed and guaranteed by the Seventh Amendment. See Leasing Service Corp. v. Crane, 804 F.2d 828, 832 (4th Cir. 1986). The right to a jury trial in the federal courts is governed by federal law. See Simler v. Conner, 372 U.S. 221, 222 (1963) (stating that jury trial right controlled by federal law to insure uniformity in exercise required by Seventh Amendment). This right may be waived and such a waiver is enforceable so long as it was made "knowingly and voluntarily." Morgan Guar. Trust Co. v. Crane, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999); see also Leasing, 804 F.2d at 832 (noting that

jury trial right can be waived by contract); Smith-Johnson Motor Corp. v. Hoffman Motors Corp., 411 F. Supp. 670, 677 (E.D. Va. 1975) (finding that waiver of jury trial in civil actions is neither illegal nor contrary to public policy). Moreover, granting the plaintiffs assumption that New York law applies, courts reviewing contractual waivers of jury trial rights under New York law have determined such waivers to be enforceable. See Great Earth Int'l Franchising Corp. v. Milks Development, 311 F. Supp. 2d 419, 437 (S.D.N.Y. 2004) (finding contractual jury trial waiver enforceable in franchise case).

  The plaintiffs have not argued that the jury trial waiver contained in the Agreement was entered into unknowingly or involuntarily. Their sole basis for objection to this waiver is predicated on the assumption that the Agreement is invalid in its entirety. As the court has found, however, that the NYFSA would not operate to invalidate the entire Agreement, rather just those portions that would restrict rights under the Act, there is no other basis for finding the jury trial waiver to be invalid. See Smith-Johnson, 411 F. Supp. at 677 (finding that no good cause had been shown against enforcement of waiver provision).

  Additionally, although the plaintiffs have made allegations of fraud in the inducement with respect to the Agreement itself, they have not singled out the jury trial waiver. In the analogous context of arbitration provisions in contracts, the United States Supreme Court has held that although allegations of fraud in the inducement relating specifically to an arbitration provision may suspend application of such a provision, allegations of fraud going to the contract generally have been held not to affect the agreement to arbitrate. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); Telum Inc., v. E.F. Hutton Credit Corp., 859 F.2d 835, 837 (10th Cir. 1988). "This analogy is especially appropriate [in the case of

contractual jury trial waivers] because submission of a case to arbitration involves a greater compromise of procedural protections than does the waiver of the right to trial by jury." Telum, 859 F.2d at 838. Accordingly, the court concludes that the plaintiffs' general allegations of fraud in the inducement are insufficient to invalidate the jury trial waiver provision.

E. Waiver of Punitive Damages

In Virginia, waivers and limitations of liability in contracts are enforceable. See Regency Photo & Video, Inc. v. America Online, Inc., 214 F. Supp. 2d 568, 573 (E.D. Va. 2002) (citing Blue Cross of Southwestern Virginia v. McDevitt & Street Co., 234 Va. 191 (1987)). The burden lies on the party attempting to prove that a contract term is invalid, and not on the party seeking to enforce the waiver. See Merriman v. Cover, Drayton & Leonard, 104 Va. 428 (1905). Similarly, under New York law, a release of liability "that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998).

Beyond their reliance on the effect of the NYFSA on the Agreement as a whole, the plaintiffs have made no other showing that the waiver of punitive damages clause is "ambiguous, unconscionable or otherwise unenforceable." Regency, 214 F. Supp. 2d at 574. This provision, as detailed in Paragraph 15(e), is clearly stated and applies to prevent either party from seeking punitive damages. Accordingly, the court concludes that the plaintiffs have failed to meet their burden of establishing that this waiver is invalid.

III. Conclusion

The waivers of the right to a jury trial and to the pursuit of punitive damages are not invalidated by the operation of the NYFSA, assuming that this law survives application of the

choice of law provision.  Nor do these waivers violate otherwise applicable Virginia, New York or federal law.  As the court cannot find that the Agreement is unenforceable as a whole based on claims of misrepresentation which go to the ultimate issues in this case, the aforementioned waivers are not invalidated by being included in the Agreement.  Thus, in accord with the provisions of the Agreement that were knowingly and voluntarily entered into by the parties and the relevant controlling law, the court **GRANTS** the defendants motion to strike the plaintiffs' request for a jury trial and request for punitive damages from the Complaint.

      The Clerk is **REQUESTED** to mail copies of this Order and Opinion to counsel for all parties.

      It is so **ORDERED**.

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 21st, 2005

15